UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

| | |
|---|---|
| LAWRENCE J. ROARK, | CIVIL ACTION NO. 6:20-54-KKC |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| 3M COMPANY, | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on Defendant's Motion for Summary Judgment. (DE 19.) Plaintiff having responded (DE 21) and Defendant having replied (DE 22), the matter is now ripe for the Court's review. For the reasons set forth herein, Defendant's Motion (DE 19) is GRANTED.

I.

Lawrence Roark worked in coal mining from 1978 to 1994, when he was forced to retire due to glaucoma. (DE 19-3 at 8, 28.) During that time period, he wore 3M 8710 respirators while working in the mines. (*Id.* at 8.) Roark says he would keep the respirators on a "hundred percent" of the time when he was underground although he doubted that the masks were as effective as advertised. (*Id.* at 13–14, 46, 55.)

In 1994, Roark was diagnosed with coal workers' pneumoconiosis (also known as "CWP" or "black lung") by multiple doctors. (DE 19-7 at 9.) Shortly after his diagnosis, Roark applied for retraining incentive benefits (RIB) with the Kentucky Department of Workers' Claims due to his CWP. (DE 19-5.) Beginning in 1996, Roark repeatedly applied for federal black lung benefits with the U.S. Department of Labor. (DE 19-9.) Despite Roark's 1994

1

CWP diagnosis and further confirmations by doctors of Roark's CWP, including in 2001 (DE 19-3 at 69–70) and in January 2017 (DE 19-11), Roark's federal benefits were still not secure as of March 2021. (DE 21-5.)

Roark filed his complaint against 3M in December 2019, more than twenty-five years after his first CWP diagnosis. (DE 1.) The complaint alleges that the 3M respirators Roark wore were defective and that the respirators' defects caused his CWP. (*Id.* at 14–18.) He seeks damages, under several theories of liability, to compensate him for the various losses he has suffered because of his injuries. (*Id.*)

The parties completed fact discovery on November 1, 2021, and the Court stayed further discovery (DE 31) in order to resolve Defendant's fully briefed motion for summary judgment. (DEs 19, 21, 22.)

## II.

Fed. R. Civ. P. 56(a) directs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

The Court will draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). If the Court determines that a rational

fact finder could not find for the non-moving party based on the record as a whole, there is no genuine issue for trial, and the Court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.

Defendant's motion turns on one question: are Roark's claims time-barred? To answer that question, the Court must determine whether the "discovery rule" tolled the statute of limitations and whether equitable estoppel prevents 3M from relying on a statute-of-limitations defense, as Roark argues. (DE 21 at 6.) The Court will consider each issue in turn.

**A. Statute of Limitations & The Discovery Rule**

Normally, a personal injury claim such as this one must be filed within one year of the time when the cause of action "accrued." Ky. Rev. Stat. § 413.140(1); *see Combs v. Albert Kahn & Assocs., Inc.*, 183 S.W.3d 190, 194 (Ky. Ct. App. 2006) (holding that plaintiffs injured by asbestos exposure have one year to file their complaint after their claim accrues). However, some causes of action are not "readily discoverable" within the default one-year period. *Vendertoll v. Commonwealth*, 110 S.W.3d 789, 797 (Ky. 2003). Such cases tend to involve latent illness or injury caused by exposure to harmful substances. *See id.* at 796–97. In these cases, a one-year statute of limitations is unnecessarily harsh because the potential plaintiffs have no way of discovering their cause of action within that year. To address that unfairness, Kentucky courts apply the "discovery rule" as an exception to the normal statute of limitations period. *See id.*

The discovery rule tolls the statute of limitations period "until the plaintiff discovers or in the exercise of reasonable diligence should have discovered" that: (1) he was injured, and (2) his injury "*may* have been caused by the defendant's conduct." *Louisville Trust Co. v.*

3

*Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979) (emphasis added) (internal quotation marks omitted).

First, "injury" is a term of art in Kentucky that is distinguishable from mere physical harm. *See Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000). For purposes of the discovery rule, injury "is defined as 'the invasion of any legally protected interest of another.'" *Id.* (quoting The Restatement (Second) of Torts § 7, comment (1965)). That does not mean, however, that the plaintiff must know that he has a legal cause of action. *See Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1982) (rejecting the argument that the statute of limitations begins to run from the date plaintiffs discovered they had a cause of action). The plaintiff must simply be aware that he has been wronged by another. *See id.*

Second, the discovery rule stops tolling the statute of limitations once the plaintiff knows, either actually or constructively, that the defendant "may" have caused his injury— definitive knowledge of causation is not required. *See Johns-Manville Prods. Corp.*, 580 S.W.2d at 501. Constructive knowledge, through awareness of sufficient "critical facts" to put the plaintiff on notice, will trigger the statute of limitations period. *Boggs v. 3M Co.*, No. 11-cv-57-ART, 2012 WL 3644967, at *3 (E.D. Ky. Aug. 24, 2012) (collecting cases), *aff'd on other grounds*, 527 Fed. App'x 415 (6th Cir. 2013); *see also Wiseman* 37 S.W.3d at 712 (holding that "actual or constructive knowledge . . . triggers the running of the statute of limitations"). So, for purposes of the discovery rule, once the plaintiff encounters facts that "should excite his suspicion[,]" he effectively has "actual knowledge of th[e] entire claim." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 64 (Ky. 2010).[1]

---

[1] While *Fluke* announced this rule in the equitable estoppel context, its reasoning clearly applies to the general issue of when a plaintiff has constructive knowledge of a potential claim for statute of limitations purposes. *See* 306 S.W.3d at 61–67; *Adams v. 3M Co.*, No. 12-61-ART, 2013 WL 3367134, at *3 n.3 (E.D. Ky. July 5, 2013).

4

Third, once the plaintiff knows he has been injured, even if he does not have actual or constructive knowledge of who caused his injury, he "has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints." *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 151 (Ky. 2007) (quoting *Combs*, 237 S.W.3d at 199). If he is not reasonably diligent in conducting such an investigation, the discovery rule will not toll the statute of limitations. *See Hazel v. Gen. Motors Corp.*, 83 F.3d 422, at *3 (6th Cir. 1996). In short, potential plaintiffs cannot simply wait for someone else to connect the dots for them. *See Fluke Corp.*, 306 S.W.3d at 67 ("Despite our sympathy for those injured by products through no fault of their own, such injured parties have the duty to act diligently to investigate apparent possible causes of their injuries in order to pursue claims within the statute of limitations.").

### 1. Roark's Injury

Roark knew that he had suffered an "injury" in 1994 when he was diagnosed with CWP by multiple doctors (DE 19-7 at 9) and then, being duly sworn, certified on his RIB application that he had CWP. (DE 19-5.) Roark seems to argue that despite his CWP diagnosis in 1994, the cause of action did not accrue until his symptoms got worse. (DE 21 at 4–5.) On this point, Roark consistently cites the discovery of an 11mm opacity in his lungs in 2020 as the injury he was not previously aware of. (*Id.*) Roark does not explain how the 2020 11mm opacity could be the injury at issue when Roark himself filed this lawsuit seeking damages for his injuries in 2019. Roark was aware of his injury in 1994, when he was diagnosed with CWP.

Given that Roark knew he had suffered an injury by the end of 1994, the Court must next determine: (1) whether Roark knew that 3M might have caused his injury, and, if not, (2) whether Roark exercised reasonable diligence in investigating the identity of his tortfeasor. *See Hazel*, 83 F.3d 422, at *3; *Johns-Manville Prods. Corp.*, 580 S.W.2d at 501.

5

## 2. Constructive Knowledge

The statute of limitations clock started for Roark in 1994 because he had "sufficient critical facts" to put him on notice that there was a potential connection between his injuries and the respirators he wore. *Boggs*, 2012 WL 3644967, at *3 (collecting cases); *see also Fluke Corp.*, 306 S.W.3d at 67 (holding that facts that should cause suspicion are the same as actual knowledge); *Wiseman*, 37 S.W.3d at 712 (holding that "constructive knowledge . . . triggers the running of the statute of limitations"). Roark describes his knowledge in 1994 as follows:

> Q  When a doc -- I guess when your doctor told you you had black lung in 1994 did you -- did you question him how you got black lung disease?
> A  I knew. No. I knew how I got it.
> Q  Did you tell them that you had worn a respirator?
> A  Yeah.
> Q  And what did he say?
> A  Huh? He said well -- he asked me what did I wear and I told him. He said – best I can remember, he said well, that's why.
> Q  What do you mean?
> A  That's why you got black lung, because the mask didn't work. I'm telling you honest to God's truth. I mean.

(DE 19-3 at 75.)  Roark describes a similar interaction with Dr. Byrd in 2001 where Roark claims Dr. Byrd said of the respirators: "[T]hem won't protect you."  (*Id.* at 75.)  By his own admission, Roark doubted the effectiveness of the masks (*Id.* at 14, 55), but wore them a "hundred percent" of the time he was in the mines (*Id.* at 46). Roark's own doubts, coupled with Roark's eventual CWP diagnosis despite his mask use and the statement from his treating physician that he probably got CWP because the masks did not work, was sufficient to trigger the statute of limitations period.

To have constructive knowledge, Roark just needed to be aware—as he was—of facts indicating that the defendant "may" have caused his injury. *Johns-Manville Prods. Corp.*, 580 S.W.2d at 501.

### 3. Reasonable Diligence

Even if Roark did not have constructive knowledge of his claim against 3M in 1994, the fact that he knew he had suffered an injury meant he had a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints. *See Fluke Corp.*, 306 S.W.3d at 67; *Queensway Fin. Holdings Ltd.*, 237 S.W.3d at 151. In cases like this, if the plaintiff does not identify the tortfeasor before the statute of limitations expires, the bar for relief is high. *See Queensway Fin. Holdings Ltd.*, 237 S.W.3d at 151 ("[T]he discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries." (internal quotation marks omitted)).

Roark does not address the "reasonable diligence" prong because he rests his argument on the idea that his injury did not occur until 2020 or 2021. (DE 21 at 6.) To defeat summary judgment, the non-moving party must make an affirmative showing of a genuine dispute, *Alexander*, 576 F.3d at 558, and direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d at 655. Roark does not make any attempt to rebut 3M's argument that he failed to act with reasonable diligence when he did not pursue a claim despite his injury, his suspicions about 3M's respirators, and the hundreds of other similarly-situated miners' lawsuits. Because Roark does not present any argument to the contrary, the Court finds as a matter of law that Roark was not reasonably diligent.

In sum, Roark had sufficient "critical facts" to put him on notice that he had a possible claim against the defendants for his injury in 1994. He also failed to exercise reasonable diligence once he learned of his injury. Thus, the discovery rule cannot rescue Roark's untimely claim.

**B. Equitable Estoppel**

Roark also contends that 3M is equitably estopped from relying on a statute-of-limitations defense. A defendant is equitably estopped from relying on a statute-of-limitations defense when he has taken "active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004); *see also Frontier Ins. Co. in Rehab. v. RLM Constr. Co.*, 468 Fed. App'x 506, 510 (6th Cir. 2012) (holding that the doctrine applies when the defendant has "acted in a manner 'calculated to mislead or deceive and induce inaction by the injured party'" (quoting *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952))). For equitable estoppel to toll the statutes of limitations, Roark must show that (1) he "lacked the means of acquiring knowledge of the truth" that the respirators he used were defective, (2) 3M acted in a way that concealed the defects of its respirator, and (3) 3M's actions prevented him from investigating the defective nature of the respirator. *Fluke Corp.*, 306 S.W.3d at 62–66.

Roark argues that 3M was intentionally deceptive and did not disclose potential respirator defects to the public. However, Roark does not demonstrate that he "lacked the means" to discover the respirator's alleged defects or that 3M's alleged concealment "prevented him from investigating" the respirator's potential defects prior to this lawsuit. In fact, in support of his argument, Roark cites 3M documents from the 1970s. (DE 21 6–9.) Presumably, such documents would have been discoverable had Roark engaged a lawyer in 1994.

Even if—as Roark argues—3M had a continuing duty to disclose the respirator's defects to the government and did not do so, its silence does not automatically toll the statute of limitations. *Fluke Corp.*, 306 S.W.3d at 63 (reversing the lower court, which held that a manufacturer's silence in the face of a statutory obligation to report product safety

8

information allows a plaintiff to assume the product is safe, because that approach "negates the plaintiff's duty to exercise reasonable diligence to investigate apparent possible causes of his injuries"). 3M's silence must have been relied upon by Roark and prevented him from "learning enough to assess whether" he should sue. *Id.* at 65 ("[E]ven if [the manufacturer] had somehow concealed evidence of a defect . . ., the possibility of [the defect] (and cause of action against the manufacturer) was evident from the facts of the [injury]."). This is not a case in which 3M, for example, initially "promis[ed] not to plead the statute of limitations" as a defense, causing Roark to stop his investigation into the respirators' defects. *E.E.O.C. v. Ky. State Police Dep't*, 80 F.3d 1086, 1095 (6th Cir. 1996) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990)). Consequently, Roark's unexcused "failure to exercise reasonable diligence to discover [his] cause of action and the identity of his tortfeasor within the time prescribed by the statute of limitations" dooms his CWP claims. *Fluke Corp.*, 306 S.W.3d at 56. Roark knew that the respirator was supposed to protect him from CWP, yet he ended up with that disease. It would have been only logical for Roark to investigate the respirators, and there is no evidence that 3M's actions caused him to overlook them as a source of his injures.

## IV. CONCLUSION

Neither the discovery rule nor equitable estoppel delays the accrual of Roark's claims past 1994. Because the one-year statute of limitations ran long before Roark filed his lawsuit in December 2019, his claims are time-barred. Summary judgment is therefore appropriate.

Accordingly, for the reasons set forth herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion for Summary Judgment (DE 19) is **GRANTED**;

(2) Defendant's other pending motion (DE 23) is **DENIED AS MOOT**;

(3) All pending deadlines and hearings are **CANCELLED**;

9

(4) The Clerk of the Court shall **STRIKE** this case from the Court's active docket; and

(5) A separate Judgment will issue.

This 18th day of November, 2021.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY